**Sammy Joe CHAVEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–86–00287–CR.**

Court of Appeals of Texas,
El Paso.

Oct. 7, 1987.

Max Christenson, Odessa, for appellant.

R.C. "Eric" Augesen, Dist. Atty., Odessa, for appellee.

Before OSBORN, C.J., and
SCHULTE and WOODARD, JJ.

OPINION

SCHULTE, Justice.

This is an appeal from an enhanced jury conviction for aggravated robbery. The court assessed punishment at twenty-four years' imprisonment. We reverse and remand.

In Point of Error No. One, Appellant asserts that the evidence was insufficient to establish the use of a deadly weapon as alleged in the indictment. Once again, we are confronted with the perplexing problem of dealing with a knife-point robbery with minimal evidence addressing the character of the knife itself. Bridled by legislative definition and higher court interpretation, we must reconcile the legal axiom that a knife is not a deadly weapon per se with a criminal scenario in which a violent offense is facilitated by the use of a dangerous instrumentality which in all but the most remote circumstances is capable of inflicting serious bodily injury or death. We may say (regardless of the failure to either produce the knife in court or the failure to provide testimony as to its dimensions) that legal experience and common lay experience dictate that virtually any instrument, backed by the requisite malice and intent, is capable of causing death, creating a substantial risk of death, causing serious permanent disfigurement or impairment of bodily function. Tex.Penal Code Ann. sec. 1.07(a)(11) and (34) (Vernon 1974). Certainly, the perpetrator, so armed, engages in the assaultive behavior, bolstered by the belief and the capacity of his weapon, and carries out his intended crime with greater

ease by his enhanced ability to instill fear of death or serious bodily injury in the mind of his victim. Yet, we are compelled to seriously consider reversal and rendition in response to a point of error saying blandly that "it was only a knife." In point of fact, the single factual criterion which prevents knives from achieving a per se status of deadly weapon is the distance between the assailant and victim, taking into account any physical impediment between the two which would render the knife practically impotent. A firearm discharged at a distance greater than the maximum effective range does not lose its character as a deadly weapon per se, and yet a knife clearly brandished within its effective range does not acquire the status of a per se deadly weapon. The inconsistency deprives the state of the law of any logical credibility. Thus, we are confronted with the most frustrating confluence of law and evidence when two male robbers armed with at least one knife accost a lone female convenience store attendant, both are in physical contact with her at times during the robbery, a sharp object is jabbed into her back, and she is forced to submit to the taking of property in her charge under the absolutely reasonable fear that the criminal instruments can and will produce her death if she resists. That such a scenario should give any appellate court pause is adequate justification for public concern about our criminal justice system. Nor by public concern do we need an unthinking lynch-mob mentality, but rather the reasonably applied common sense from which the vast bulk of our laws originally derive. That most frustrating scenario suggested above presents itself in the record before us.

The complainant in this case testified that Appellant and another male entered her store while she was mopping the floor. Appellant faced her and stepped on the mop. His companion moved behind her and jabbed a sharp object into her back. Appellant struck the mop from her hand and ordered her to open the cash register. The accomplice twisted her arm and forced her over to the register, keeping the sharp object in her back. After she opened the

register, the robbers switched places. Appellant drew out a knife and approached the register and the complainant. He kept the knife out as he emptied the register. A female customer entered and was pushed aside as the robbers fled. The complainant could not ascertain the nature of the sharp object pressed to her back. Appellant was holding a knife but no dimensions were given. The jury was advised that the blade was sharpened on both sides (R III, 39). The female customer testified that one of the men was armed with a knife, without specifying which one or further describing the knife. No weapons were ever recovered for use at trial.

We recognize that this evidence does not rise to the level ultimately found sufficient in *Tisdale v. State*, 686 S.W.2d 110 (Tex.Crim.App.1984) (opinion on rehearing affirming an unpublished opinion of this Court). In *Tisdale*, the knife was recovered and exhibited to the jury. The appellate record contained a photograph of the knife beside a ruler indicating a blade length of two and five-eighths inches. Otherwise, the cases are quite similar. In neither case was there an express verbal threat to use the knife. In *Tisdale*, it was apparently held toward the victim's face making the nonverbal threat quite clear. Here, it (the Appellant's instrument) was taken out as Appellant moved to the register and to the complainant, and was kept out during the removal of the money. The implicit threat was strengthened by the jabbing of a sharp object into the complainant's back, regardless of the nature of that object. In both cases, the assailants were certainly within close enough range to make effective damaging use of a knife. There was even more physical contact in the present case. Thus, all that is lacking in this case is the estimation of a blade length for this double-edged knife. The rule that a knife is not a per se deadly weapon is a double-edged rule—while no minimum blade length has been recognized as establishing a per se deadly status, no minimum blade length has been established as a prerequisite for a fact finding of deadly character. As suggested above, with

pointed or edged weapons, the critical factor is proximity of assailant and victim. We find that factor, together with the other evidence of the manner of use and the conduct of the assailants, sufficient to override the distinction between this evidentiary record and that presented in *Tisdale*. Point of Error No. One is overruled.

■ Mindful of the problem presented above and the conclusion we have reached, we nonetheless feel constrained to sustain Appellant's second complaint. There was a factual issue as to the deadly character of the knife. As a separate interpretation, not merely by all-encompassing proof of the greater offense, the jury could have concluded that the weapon was not used or intended to be used in a deadly manner, thus giving rise to a robbery verdict. The State's reliance on *McKinney v. State*, 627 S.W.2d 731 (Tex.Crim.App.1982), is misplaced. Appellant's alibi defense does not preclude the application of a lesser offense instruction. The defendant's denial in *McKinney* left the issue drawn on whether he was the perpetrator of the alleged burglary. There was no factual issue that the offense committed amounted to no less than a burglary with a completed subsidiary offense of theft. Criminal trespass had not been raised either by the State's evidence or the defense's total denial of guilt. Here, there is a jury question as to the proper characterization of the offense in addition to the issue of identity of the perpetrator. Point of Error No. Two is sustained.

The judgment is reversed and the cause remanded for new trial.